# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOHN BAKOPOULOS, et al.,

    Plaintiffs,

v.

MARS PETCARE US, INC.,

    Defendants.

No. 20 CV 6841

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Defendant Mars Petcare US, Inc. manufactures and markets various dog foods. Plaintiffs—the owners of many canines—bought some of those foods, branded as Nutro Limited Ingredient Diets. Plaintiffs argue that the dog food they bought was not as advertised or labeled because the products included wheat, soy, and chicken. Plaintiffs seek to represent a class of consumers and bring claims for breach of express and implied warranties, violation of three state consumer protection statutes, and unjust enrichment. Mars moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, Mars's motion is granted in part and denied in part.

## I. Legal Standards

A challenge to plaintiffs' standing to bring a claim is a challenge to this court's subject-matter jurisdiction, *see Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015), and is usually made through a motion under Federal Rule of Civil Procedure 12(b)(1). As the party invoking federal jurisdiction, the plaintiffs bear the burden of

establishing that jurisdiction. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). Because Mars makes a facial challenge to subject-matter jurisdiction, I consider only the complaint, documents incorporated by reference in the pleadings, and matters subject to judicial notice, accepting the well-pleaded facts as true and drawing all reasonable inferences in plaintiffs' favor. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); *Silha*, 807 F.3d at 173.

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. Illinois courts exercise jurisdiction to the limit set by the federal Due Process Clause. *Noboa v. Barcelo Corporacion Empresarial*, 812 F.3d 571, 572 (7th Cir. 2016). When a defendant moves to dismiss based on personal jurisdiction, the plaintiffs bears the burden of establishing a prima facie case of jurisdiction. *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018); *Brook v. McCormley*, 873 F.3d 549, 551–52. (7th Cir. 2017).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

## II. Background

To alleviate allergies or provide other benefits, pet owners choose certain types of foods for their animals. [5] at ¶ 48.[1] These premium products—which can cost more than the competition—include "grain free" and "limited ingredient" pet foods. *Id.* at ¶¶ 48–49. Such products are often recommended to dog owners by veterinarians. *Id.* at ¶ 51. Defendant Mars Petcare US, Inc. manufactured and marketed some of these foods, branded as Nutro Limited Ingredient Diets. *Id.* at ¶ 10. The product line included several different varieties, including "Adult Lamb & Sweet Potato Recipe Grain Free," "Adult Salmon & Lentils Recipe Grain Free," and "Adult Venison Meal & Sweet Potato Recipe Grain Free." *Id.* at ¶ 2. Mars sold these foods both online and through third-party retailers, and targeted dog owners worried about food allergies. *Id.* at ¶¶ 10, 51–52. Through the brand name, on its website, and on product packaging, Mars represented that its "Limited Ingredient" products were, in fact, limited in their ingredients. *Id.* at ¶¶ 52–54. On Mars's website, for instance, it advertised that the dog foods in question "avoid ingredients that commonly cause food sensitivities in pets, like chicken, beef, corn, wheat, soy and dairy protein." *Id.* at ¶ 52. Product packaging included large and prominent disclaimers: "NO CHICKEN" and "Grain Free." *Id.* at ¶ 54. Mars represented that the foods contained "10 Key Ingredients or Less Per Bag," and that wheat, soy, and chicken were not among them.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of the filings. The facts are taken from plaintiffs' complaint. [5].

*Id*. at ¶¶ 55–56. An ingredients list on the products did not include wheat, soy, or chicken. *Id*. at ¶ 56.

Plaintiffs are six dog owners who bought the Nutro Limited Ingredient Diets foods. *Id*. at ¶¶ 4–9, 14–39. Plaintiffs paid more for Mars's products than for other dog foods, having viewed Mars's representations and relied on them. *Id*. at ¶¶ 15–16, 21–22, 25–26, 29–30, 33–34, 37–38. John Bakopoulos, Penny Bowers, and Maria Perez purchased Mars's dog foods near their homes in Illinois. *Id*. at ¶¶ 15, 21, 25. Annie White bought Nutro Limited Ingredient Diets foods in Wisconsin, while Maureen Phend and Cheryl Miller purchased the products in South Carolina. *Id*. at ¶¶ 29, 33, 37.

Plaintiffs conducted a Q-PCR DNA analysis of Mars's products, and found that they contained more than trace amounts of chicken, wheat, and soy. *Id*. at ¶¶ 58–59. Defendant "knew or should have known" that its misrepresentations about the ingredients were likely to mislead consumers. *Id*. at ¶ 127. Plaintiffs bring a putative class action against Mars, alleging seven total claims. [5]. All plaintiffs bring claims for breach of express warranty; breach of implied warranty; violation of the Magnuson-Moss Warranty Act; and unjust enrichment. *Id*. at ¶¶ 83–118. The Illinois plaintiffs bring claims under the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id*. at ¶¶ 119–32. Annie White brings a claim under the Wisconsin Deceptive Trade Practices Act. *Id*. at ¶¶ 133–45. Maureen Phend and Cheryl Miller allege claims for violation of the South Carolina Unfair Trade Practices Act. *Id*. at ¶¶ 146–58.

Mars moves to dismiss all claims. [13]. Mars argues that this court lacks personal jurisdiction over it as to the claims brought by the Wisconsin and South Carolina plaintiffs. [14] at 9–10. Defendant also argues that plaintiffs do not have standing to bring claims related to products that they did not buy and to seek prospective injunctive relief. *Id*. at 11, 20. Finally, Mars argues that plaintiffs have not alleged the required facts to support any of their claims. *Id*. at 13.[2]

## III. Analysis

### A. Article III Standing

Article III of the U.S. Constitution limits federal court jurisdiction to cases or controversies brought by plaintiffs who "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)). Defendants challenge plaintiffs' standing in two ways. First, Mars argues that plaintiffs do not have standing to bring claims with respect to products that they did not purchase. [14] at 11. Second, Mars argues that plaintiffs have not met the required showing of likely injury for prospective injunctive relief. *Id*. at 20.

---

[2] The Illinois plaintiffs concede their warranty claims under state and federal law because they did not provide Mars with the required pre-suit notice and opportunity to cure. [17] at 5–6. Plaintiffs' request to substitute new Illinois plaintiffs is denied. [17] at 6 n.5. A party may not amend its pleading through a brief in opposition to a motion to dismiss. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). To file an amended complaint, plaintiffs must bring a motion under Federal Rule of Civil Procedure 15.

5

### 1. *Products Not Purchased*

Plaintiffs' claims relate to six products, four of which they bought, and two of which they did not. [5] at ¶ 2; [17] at 4.[3] Defendants argue that plaintiffs cannot satisfy the injury-in-fact requirement with respect to products that they did not buy, and that because plaintiffs did not buy the Duck & Lentils Recipe Grain Free or Small Bites Adult Lamb and Sweet Potato Recipe dog foods, they lack Article III standing to pursue claims based on those products. [14] at 11. Plaintiffs claim that they have standing to bring claims on products that are substantially similar to those that injured them. [17] at 4–5.

Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products. *See Weaver v. Champion Petfoods USA Inc.*, No. 20-2235, 2021 WL 2678801, at *5 (7th Cir. 2021) (finding that a plaintiff lacked standing in a class action consumer products case where he alleged injury relating to products that he did not buy that were similar to those he had bought); *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] person cannot predicate standing on injury which he does not share.") (quoting *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974)) (Burger, C.J., dissenting). Plaintiffs cite to several district court decisions where consumer-fraud claims based on substantially similar

---

[3] Among the Nutro Limited Ingredient Diets products, plaintiffs John Bakopoulos, Penny Bowers, and Cheryl Miller purchased the Adult Venison Meal & Sweet Potato Recipe Grain Free Dog Food. [5] at ¶¶ 14, 20, 36. Cheryl Miller also bought the Adult Salmon & Lentils Recipe Grain Free Dog Food. *Id.* at ¶ 36. Maria Perez and Maureen Phend bought the Adult Large Breed Lamb & Sweet Potato. *Id.* at ¶¶ 24, 32. Annie White bought the Adult Lamb & Sweet Potato Recipe Grain Free Dog Food. *Id.* at ¶ 28. No plaintiffs bought either the Small Bites Adult Lamb and Sweet Potato Recipe or the Adult Duck & Lentils Recipe Grain Free Dog Food, although plaintiffs bring claims on those products. *Id.* at ¶ 2.

products survived until at least the class certification stage. [17] at 4; *see Wagner v. Gen. Nutrition Corp.*, No. 16-CV-10961, 2017 WL 3070772, at *5–6 (N.D. Ill. 2017); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *6–7 (N.D. Ill. 2017); *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-cv-05828, 2018 WL 1695421, at *4 (N.D. Ill. Mar. 29, 2018). Those cases are not controlling, and I find their reasoning unpersuasive. Whether these plaintiffs may be adequate class representatives for absent class members injured by similar products is a different question than the issue here. At this stage of the case, there is no class and plaintiffs cannot bypass the "irreducible constitutional minimum" of Article III standing for their individual claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs' claims relating to products they did not purchase are dismissed without prejudice for lack of standing.

### 2. *Prospective Injunctive Relief*

Plaintiffs seek prospective injunctive relief. [5] at ¶ 82. To seek prospective injunctive relief, plaintiffs must allege a "real and immediate" threat of future violations of their rights, *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)), and must claim an injury in fact that is "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

7

Plaintiff Bakopoulos argues that he would "be willing" to buy Mars's products in the future if they "conformed to the product packaging." [5] at ¶ 19. Plaintiffs also note that Mars continues to sell the dog foods in question. *Id.* at ¶ 121; [17] at 13. Because plaintiffs allege only conjectural future injuries, and not imminent ones, they lack standing to seek prospective injunctive relief. Bakopoulos is aware of the true nature of Mars's products and their marketing (as shown by the complaint) and he is therefore unlikely to be harmed by the defendant's practices in the future. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014) (finding a plaintiff unlikely to be harmed in the future by sales practices that he was already aware of); *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, No. 15-CV-5070, 2017 WL 2215025, at *7–8 (N.D. Ill. May 19, 2017) (same). Because plaintiffs have not shown the required injury-in-fact, they lack standing to pursue prospective injunctive relief.

## B. Personal Jurisdiction

The Due Process Clause allows courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general and specific. *Id.* at 697–98. Because plaintiffs

8

do not argue that Mars was "at home" in Illinois, general jurisdiction is not at issue here. [5] at ¶¶ 10, 12; [17] at 3–4; *see id.*

Specific jurisdiction is case specific. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447–48 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1126 (2021); *Kipp*, 783 F.3d at 697–98. It depends on an "affiliatio[n] between the forum and the underlying controversy," such as an activity or occurrence that "takes place in the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). To establish specific personal jurisdiction, the plaintiff must show that the defendant's contacts with Illinois "related to the challenged conduct." *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018); *see N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[D]efendant's contacts with the forum state must 'directly relate to the challenged conduct or transaction.'") (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). In other words, a court has specific personal jurisdiction where the defendant has "purposefully availed himself of the privilege of conducting business" in the forum state, and "the alleged injury arises out of the defendant's forum-related activities." *Id.*

This court lacks specific personal jurisdiction over Mars for the claims brought by Annie White, Cheryl Miller, and Maureen Phend. White bought Mars's products in Wisconsin, [5] at ¶ 29, and Phend and Miller bought the dog food in South Carolina. [5] at ¶¶ 33, 37. Mars had no interaction with Illinois that was related to these purchases, so there is no specific jurisdiction over Mars for those claims.

9

Plaintiffs confuse the personal jurisdiction rules for named and unnamed plaintiffs in a class action. [17] at 3–4. Plaintiffs cite *Mussat* for the proposition that out-of-state plaintiffs' claims should survive in a class action absent a showing of personal jurisdiction, but the court in that case distinguished between named representatives in a class action (who "must be able to demonstrate either general or specific personal jurisdiction" over defendants for their claims) and unnamed class members, who need not. *Mussat*, 953 F.3d at 447. Here, White, Miller, and Phend are named plaintiffs, and must demonstrate personal jurisdiction over Mars for each of their claims. *Id.*; *see also* 2 William B. Rubenstein, *Newberg on Class Actions* § 6:25 (5th ed. 2014) ("A court must have personal jurisdiction to adjudicate the putative class representative's claims against the defendant just as in any individual case.").[4] Mars's motion to dismiss all claims asserted by White, Miller, and Phend is granted for lack of personal jurisdiction. Dismissal is without prejudice. *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 584 (7th Cir. 2008) (dismissal for lack of personal jurisdiction does not preclude a plaintiff from refiling and litigating in a proper forum).

---

[4] The other cases cited by plaintiffs do not support their argument. *See Al Haj v. Pfizer Inc.*, 338 F.Supp.3d 815, 819–22 (N.D. Ill. 2018) (holding that *absent* class members are not required to make a showing of personal jurisdiction); *Curran v. Bayer Healthcare LLC*, No. 17 C 7930, 2019 WL 398685, at *3 (N.D. Ill. Jan. 31, 2019) (declining to require a showing of personal jurisdiction for the claims of *prospective* class members). While the Supreme Court's decision in *Bristol-Myers* may or may not require dismissal of plaintiffs' claims, the Seventh Circuit's ruling in *Mussat* certainly does. *See Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1781 (2017); *Mussat*, 953 F.3d at 445–49 (discussing the ambiguous reach of *Bristol-Myers*, which involved the exercise of specific jurisdiction by a state in a mass action, not a federal class action).

## C. Failure to State a Claim

Two claims brought by the Illinois plaintiffs remain: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and unjust enrichment.

### 1. *Illinois Consumer Fraud and Deceptive Business Practices Act*

The Consumer Fraud Act prohibits "unfair or deceptive acts or practices ... in the conduct of any trade or commerce." 815 ILCS 505/2. Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Id.* To state a claim under the Act, a plaintiff must show "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934–35 (7th Cir. 2010)). But "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 169 (2005); *see Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 398–400 (7th Cir. 2011).

A claim under the Consumer Fraud Act may allege deceptive conduct, unfair conduct, or both. *Vanzant*, 934 F.3d at 738. The pleading standards vary depending on the type of conduct alleged. *Id.* at 738–39. On the one hand, a claim that alleges deceptive conduct must meet the requirements of Rule 9(b), and a plaintiff must plead the "who, what, when, where, and how" of the fraud. *Id.* (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). If plaintiffs allege unfair conduct, on the other hand, a court must consider whether the conduct in question

11

"offends public policy," is "immoral, unethical, oppressive, or unscrupulous" and whether it "causes substantial injury to consumers." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014).

Mars argues that dismissal of the fraud claim is warranted for three reasons: plaintiffs have merely restated a claim for breach of warranty; plaintiffs have not met the heightened pleading requirements of Rule 9(b) despite alleging deceptive conduct; and plaintiffs have not adequately alleged damages. [14] at 17–19. Plaintiffs argue that they have alleged conduct that was both deceptive and unfair, and that in either case they have met the pleading requirements under the Consumer Fraud Act. [17] at 11–12. Plaintiffs argue that this case resembles *Vanzant*, and that under that decision they have stated a claim. *Id.* at 12 (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019)). I agree with plaintiffs.

*a. Plaintiffs Do Not Restate a Breach of Warranty Claim*

Under Illinois law, "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 169 (2005) (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill.App.3d 308, 312 (2nd Dist. 2000)). But "affirmative acts of misrepresentation" made by defendants who knowingly induce consumers to enter contracts can support a claim under the Consumer Fraud Act. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 400 (7th Cir. 2011); *Connick v. Suzuki Motor Co.*,

12

174 Ill.2d 482, 501–04 (1996); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738–39 (7th Cir. 2019).

Mars argues that plaintiffs have not identified deception apart from that connected to "the purported express warranty." [17] at 17–18.[5] But plaintiffs have alleged that Mars's representations were more than merely a contractual promise: they are claiming that Mars falsely labeled its dog foods as being free from chicken, soy, or wheat, all the while knowing that those representations would likely mislead customers. [5] at ¶ 127. The defendant knew that customers would rely on its promises about the limited ingredients in its dog food, and based its marketing and sales strategies on that reliance, targeting dog owners' concerns about their animals' food allergies. *Id.* at ¶¶ 51, 62. According to the complaint, Mars's knowing misrepresentations were a deceptive practice, purposely aimed at perpetuating fraud, not merely a failure to perform in a contract.

When defendants knowingly make misrepresentations, especially misrepresentations that induce consumers to enter a contract, some courts hold that such conduct can support a claim under the Consumer Fraud Act. *See Greenberger*, 631 F.3d at 400 (citing *Petri v. Gatlin*, 998 F.Supp. 956, 967–68 (N.D. Ill. 1997)) (indicating that "affirmative acts of misrepresentation" could support a claim and citing as an example a case involving false promises made in marketing materials);

---

[5] Mars is correct that plaintiffs did not squarely address this argument in their response. [18] at 10–11. But by alleging that Mars knowingly made affirmative acts of misrepresentation, plaintiffs did "proffer some legal basis to support" their Consumer Fraud Act claim, and therefore did not waive all argument on this issue. *See Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006), *as amended* (Apr. 11, 2006) (quoting *Stransky v. Cummins Engine Co.,* 51 F.3d 1329, 1335 (7th Cir.1995)).

13

*Connick,* 174 Ill.2d at 503 (plaintiffs adequately stated a claim under the Consumer Fraud Act because they alleged that defendant was aware of flaws in its product, failed to disclose those flaws, and misrepresented the product in an interview with a magazine); *Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650, at *5–6 (N.D. Ill. Sept. 28, 2017) (plaintiff adequately pled a claim because they alleged that defendant knowingly failed to disclose a defect). Other courts, including those cited by the defendant, have read the *Avery*/*Greenberger* rule more broadly, and have dismissed Consumer Fraud Act claims whenever they are not grounded in facts separate from those related to breach of contract. *See Parrot v. Fam. Dollar, Inc.*, No. 17 C 222, 2018 WL 2118195, at *4 (N.D. Ill. May 8, 2018) (dismissing a claim because a plaintiff did not "allege sufficient facts to distinguish her breach of warranty claim from her ICFA claim"); *Lambert v. Dollar Gen. Corp.*, No. 16 C 11319, 2017 WL 2619142, at *6 (N.D. Ill. June 16, 2017) (dismissing plaintiff's claim because it was "based only on the same affirmative statements that backstop their breach-of-express-warranty claim"); *Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d 893, 913 (N.D. Ill. 2013) (dismissing a claim because plaintiffs' allegations were largely duplicative of their express warranty claim and did not otherwise allege conduct likely to deceive a consumer).

Absent clearer guidance from the Illinois Supreme Court, I read the prohibition on overlapping contract and consumer-fraud claims to not apply to misrepresentations in the kind of product marketing at issue here. These claims are not about the mere failure to perform a contractual promise as in the *Avery* line of

14

cases, but about affirmative acts of misrepresentation. Under *Greenberger* and *Vanzant*, deceptive product marketing can state a claim under the Consumer Fraud Act, and I follow that line of authority.[6]

### b. Rule 9(b)

Plaintiffs argue that Mars engaged in both deceptive and unfair conduct, [17] at 11, but the complaint sounds in deception, not unfairness. Mars's website, packaging, and "Limited Ingredient" branding were deceptive because they presented the dog foods as something they were not: free from wheat, soy, and chicken. [5] at ¶¶ 51–60. Mars knew that consumers would rely on its representations about the limited ingredients in its dog food, and that consumers would likely be misled. *Id.* at ¶¶ 62, 127, 140, 153.

Mars argues that the complaint is defective because it does not include sufficient detail about plaintiffs' DNA testing or how much wheat, soy, and chicken would be considered "material." [14] at 13–14. Mars also argues that plaintiffs' allegation that its products contained a "material amount" of wheat soy or chicken is a "legal conclusion" unsupported by specific evidence about whether the dog food in question harmed plaintiffs' dogs. *Id.* at 14. But Mars is mistaken about the specificity

---

[6] Even if plaintiffs had not alleged affirmative acts of misrepresentation, their Consumer Fraud Claim is not predicated on "a simple breach of contract," *Greenberger*, 631 F.3d at 399, because it is not clear that they entered a contract at all. In contrast to those Consumer Fraud Act cases involving an express agreement, including those cited by the defendant, the relationship between plaintiffs and Mars is indirect. Plaintiffs purchased Mars's products from retailers in Illinois, and Mars itself raised lack of privity as a defense to plaintiffs' warranty claims. [14] at 16–17. Because plaintiffs' allegations of fraud under the Consumer Fraud Act likely did not arise in a "contractual setting," *Greenberger*, 631 F.3d at 399, plaintiffs were not required to allege deceptive acts distinct from their breach of contract claims.

required by Rule 9(b). The rule "does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). Rather, a plaintiff alleging deceptive conduct under the Consumer Fraud Act must offer a detailed account of the circumstances surrounding the misrepresentation. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). The "materiality" of the amounts of wheat, soy, and chicken is not a legal conclusion, but a factual statement about quantity that plausibly suggests that Mars's statements about the ingredients were false. The problem alleged isn't harmful amounts of ingredients, but the presence of ingredients that Mars said it did not include at all. As for the legal element of materiality, plaintiffs adequately allege that element by asserting that they would not have purchased Mars's dog foods had they known that they contained wheat, soy, or chicken. [5] at ¶ 18; *see Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 505 (1996) ("A material fact exists where a buyer would have acted differently knowing the information.").[7] Rule 9(b) does not require more, and plaintiffs' complaint satisfies the rule.

---

[7] The cases Mars relies on are not to the contrary. The court in *Indigo Old Corp. v. Guido* considered a complaint that was "bare of any factual allegations," and accordingly dismissed a claim that alleged only "legal conclusions." No. 19 C 7491, 2020 WL 7013962, at *4 (N.D. Ill. Nov. 29, 2020). In *Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*, the court found that plaintiffs had not plausibly alleged a claim because they "had not included allegations in their complaint that are sufficient to plausibly suggest" that a certain amount of money was material. No. 09-CV-5641, 2011 WL 1303387, at *25 (N.D. Ill. Mar. 31, 2011). By contrast, the plaintiffs here have offered a complaint supported by adequate factual allegations and have alleged the existence of a material fact—one that influenced their decision to purchase the products—as required by the Consumer Fraud Act.

The complaint shows that the brand name "Nutro Limited Ingredient Diets," Mars's website, and the product packaging were deceptive; that Mars knew these representations were deceptive and were likely to be relied on; that plaintiffs saw those representations and relied on them in making their purchases; that the dog food was not as expected; and that plaintiffs suffered damages as a result of Mars's conduct because they paid a premium for Mars's products. As in *Vanzant*, this level of detail satisfies the pleading requirements of Rule 9(b). *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). Plaintiffs have pled deception under the Consumer Fraud Act with the required particularity.

### *c. Actual Damages*

Where private individuals bring claims under the Consumer Fraud Act, they must show "actual damages" in the form of "pecuniary loss." *Camasta*, 761 F.3d at 739 (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). One way to do that is to show that "the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Kim*, 598 F.3d at 365 (quoting *Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620, 628 (3rd Dist. 2008)). Defendants argue that plaintiffs have not adequately shown actual damages because they "fail to allege facts regarding what the alleged value of the products were or what the price of a comparable product without the label representations would have been." [14] at 18. But the complaint alleges that the dog food that plaintiffs bought was defective, and that plaintiffs paid more for Mars's products than they would have for non-limited ingredient dog foods. [5] at ¶¶ 15, 21, 25. Those facts are enough to show

17

actual damages. *See Vanzant*, 934 F.3d at 739 (damages were adequately alleged because "plaintiffs paid a higher price"); *Camasta*, 761 F.3d at 735. Because plaintiffs allege that they paid a premium as compared to other dog foods that were available to them, and that the defendant's dog food was defective, the complaint alleges actual damages. The motion to dismiss the Consumer Fraud Act claim is denied.

### 2. *Unjust Enrichment*

Under Illinois law, "unjust enrichment is not a separate cause of action." *Vanzant*, 934 F.3d at 739–40 (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)). Instead, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and will "stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Accordingly, the request for relief based on unjust enrichment is linked to the fate of plaintiffs' Consumer Fraud Act claim. *See id.*; *Vanzant*, 934 F.3d at 740. Because the Consumer Fraud Act claim may move forward, the request for restitution based on unjust enrichment survives as well.

## IV. Conclusion

Mars's motion to dismiss, [13], is granted in part and denied in part. Claims related to products that plaintiffs did not purchase, along with the request for prospective injunctive relief, are struck for lack of standing. The claims brought by plaintiffs White, Miller, and Phend are dismissed without prejudice for lack of personal jurisdiction. The Illinois plaintiffs' breach of warranty and Magnuson-Moss

18

claims are dismissed without prejudice, but their claims under the Consumer Fraud Act and for unjust enrichment are not dismissed. The parties shall file a status report on July 26, 2021, with a proposal for a case schedule, including a deadline for defendant to answer the complaint. If plaintiffs intend to move to file an amended complaint, then defendant need not answer the operative complaint and the parties should propose a deadline for the filing of the motion to amend and defendant's response. The status report must propose a discovery schedule.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 12, 2021