UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN BAKOPOULOS, et al., | |
| Plaintiffs, | No. 20 CV 6841 |
| v. | Judge Manish S. Shah |
| MARS PETCARE US, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Defendant Mars Petcare US, Inc. manufactures and markets various dog foods. Plaintiffs bought Mars's products—branded as Nutro Limited Ingredient Diets—but claim that the dog foods weren't as advertised because they included wheat, soy, and chicken. Plaintiffs want to represent a class of consumers and bring claims for breach of express and implied warranties, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and unjust enrichment. Mars moves to dismiss the warranty claims alleged in the second amended complaint. For the reasons discussed below, the motion is granted in part and denied in part.

**I.    Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court

must construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018) (citing *Deppe v. NCAA*, 893 F.3d 498, 499 (7th Cir. 2018)).

## II.  Background

To improve their dogs' health, pet owners pay more for limited ingredient foods, including those free from wheat, soy, and chicken. [30] ¶¶ 1–2, 43–44, 56, 61, 82, 102.[1] Mars manufactured and marketed some of these foods, branded as Nutro Limited Ingredient Diets. *Id.* ¶¶ 9, 35. The product line featured varieties including "Adult Lamb & Sweet Potato Recipe Grain Free," "Adult Salmon & Lentils Recipe Grain Free," and "Adult Venison Meal & Sweet Potato Recipe Grain Free." *Id.* ¶ 2. Mars sold the Nutro foods by way of third-party retailers and online. *Id.* ¶ 9.

Through its marketing, Mars represented that its limited ingredient dog foods were, in fact, limited in their ingredients. [30] ¶¶ 46–47, 49, 91. Product packaging prominently advertised that Mars's foods were "grain free," included "NO CHICKEN and "no corn, wheat or soy." *Id.* ¶ 49. Packaging also said that the Nutro foods included "10 Key Ingredients or Less Per Bag," *id.* ¶¶ 50–51, and Mars's website advised that the dog foods "avoid ingredients that commonly cause food sensitivities in pets." *Id.* ¶ 47. Through these representations, Mars appealed specifically to dog

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the second amended complaint. [30].

2

owners concerned about their pets' health, *id.* ¶ 46, and intended to induce plaintiffs to purchase its foods. *Id.* ¶ 92.

Plaintiffs are five dog owners who bought the Nutro Limited Ingredient Diets foods. [30] ¶¶ 13–34. They paid more for Mars's products than for competitors', having viewed Mars's representations and relied on them. *Id.* ¶¶ 14–15, 20–21, 24–25, 28–29, 32–33. Plaintiffs Jeter and O'Connor purchased just one type of the Nutro Limited Ingredient Diets: the Adult Lamb & Sweet Potato Grain Free Recipe dog food. *Id.* ¶¶ 27, 31. Jeter's and O'Connor's requirements for Mars's products were that the dog foods didn't include wheat, soy, or chicken, and that they were limited in their ingredients. *Id.* ¶¶ 102–03.

The problem, according to plaintiffs, is that Mars's products included chicken, wheat, and soy. [30] ¶¶ 53–54. Plaintiffs conducted a Q-PCR DNA analysis of Mars's dog foods, and found that they contained "significant" amounts of these ingredients. *Id.* Plaintiffs want to represent a class of similarly situated consumers, and bring five claims against Mars. *Id.* ¶¶ 64–129. All plaintiffs allege a violation of the Illinois Consumer Fraud Act and unjust enrichment. *Id.* ¶¶ 109–129. Plaintiffs Jeter and O'Connor also bring state-law claims for breaches of express and implied warranties and related federal claims under the Magnuson–Moss Warranty Act. *Id.* ¶¶ 74–108.

In this second motion to dismiss, Mars moves to dismiss the warranty claims. [31]. The original plaintiffs conceded the dismissal of warranty claims in their first amended complaint because they didn't provide Mars with the required pre-suit notice. *See Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215,

3

at *2 n.2 (N.D. Ill. July 12, 2021). I declined to substitute plaintiffs Jeter and O'Connor into the case at that stage, *id.*, and instead they were added as parties to this suit in the second amended complaint. [30]. The issues now are whether Jeter and O'Connor provided Mars with the requisite notice for their warranty claims, and whether they have stated any claim for breach of warranty.[2]

## III. Analysis

### A. Notice

Defendants argue that all of the warranty claims should be dismissed because Jeter and O'Connor didn't provide the required pre-suit notice for their claims. [32] at 6–9. Under Illinois law, a buyer who discovers a breach of warranty must notify the seller "or be barred from any remedy." 810 ILCS 5/2-607(3)(a).[3] The requirement

---

[2] The complaint says that four of Mars's products are at issue in this case, *see* [30] ¶ 2, and implies that Jeter and O'Connor bring their warranty claims based on all four of those products. *See id.* ¶¶ 78, 82–83, 87, 90, 94, 99. But Jeter and O'Connor only bought one of Mars's dog foods: the "Adult Lamb & Sweet Potato Grain Free." *Id.* ¶¶ 27, 31. Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack Article III standing with respect to those products. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 936 (7th Cir. 2021) (finding that a plaintiff lacked standing in a class action consumer products case where he alleged injury relating to products that he did not buy that were similar to those he had bought); *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] person cannot predicate standing on injury which he does not share.") (quoting *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974)) (Burger, C.J., dissenting). O'Connor withdraws claims relating to products other than the one she purchased, *see* [37] at 10 n.3, and Jeter waived argument as to those products by failing to respond to defendant's arguments. *See id.*; *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (citations omitted) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court."). Jeter's and O'Connor's claims as to products they did not buy are dismissed without prejudice for lack of standing.

[3] The court has subject-matter jurisdiction under the Class Action Fairness Act because plaintiffs are citizens of Illinois, Mars is a citizen of Delaware and Tennessee, the amount in controversy exceeds $5 million, and plaintiff seeks to represent a class in excess of 100 members. [30] ¶¶ 4–10, 64, at 27–28; 28 U.S.C. § 1332(d). Federal courts sitting in diversity apply the substantive law of the forum state, so Illinois law applies. *See Piltch v. Ford Motor*

4

of pre-suit notice is intended to encourage settlement, cure defects, and minimize damages. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 495 (1996); U.C.C. § 2–607 cmt. 4; *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill.App.3d 935, 939 (3d Dist. 1998) (citations omitted). Notice must be made in good faith. *See Maldonado*, 296 Ill.App.3d at 940; *Baldwin v. Star Sci., Inc.*, No. 14 C 588, 2016 WL 397290, at *10 (N.D. Ill. Feb. 2, 2016) (quoting *Maldonado*, 296 Ill.App.3d at 939); *see* U.C.C. § 2-607 cmt. 4, 5. If plaintiffs' notice is insufficient under Illinois law, it also fails under federal law, because the Magnuson–Moss Warranty Act incorporates state-law notice requirements. *See Perona v. Volkswagen of Am., Inc.*, 292 Ill.App.3d 59, 65 (1st Dist. 1997) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986)); *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F.Supp.3d 772, 799 (N.D. Ill. 2016) (citations omitted).

Generally, the sufficiency of notice is a question of fact. *See Datil v. C.R. Bard, Inc.*, No. 19 C 8274, 2020 WL 5810402, at *6 (N.D. Ill. Sept. 30, 2020) (citing *Malawy v. Richards Mfg. Co.*, 150 Ill.App.3d 549, 561 (5th Dist. 1986)); *Baldwin*, 2016 WL 397290, at *10 (citations omitted); *Halo Branded Sols., Inc. v. RTB W., Inc.*, Case No: 15 C 50152, 2016 WL 1161340, at *4 (N.D. Ill. Mar. 24, 2016) (quoting *Maldonado*, 296 Ill.App.3d at 940). But when the only inference to be drawn is that notice was unreasonable, a court may decide whether notice was sufficient as a matter of law. *Datil*, 2020 WL 5810402, at *6 (quoting *Maldonado*, 296 Ill.App.3d at 940); *Baldwin*,

---

*Co.*, 778 F.3d 628, 631–32 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

5

2016 WL 397290, at *10 (quoting *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F.Supp.2d 933, 941 (N.D. Ill. 2013)).

On March 19, 2021, Jeter and O'Connor sent a letter to Mars, identifying the alleged defects with the dog food. [30] ¶¶ 96, 108; [32-1]. At the time the letter was sent, Jeter and O'Connor weren't parties to this lawsuit, but three days later the original plaintiffs sought to join Jeter and O'Connor through their opposition to the first motion to dismiss. *See* [17] at 6 n.5. I declined to add new plaintiffs at that stage in the case, *see Bakopoulos*, 2021 WL 2915215, at *2 n.2, and instead Jeter and O'Connor were joined months later, on October 5, 2021, when plaintiffs filed their second amended complaint. *See* [30] ¶¶ 27–34. Mars never responded to the letter from Jeter and O'Connor. *Id.* ¶ 96.

Mars argues that by providing notice of their claims just days before they asked to be added to ongoing litigation, Jeter and O'Connor didn't give pre-suit notice in good faith. *See* [32] at 6–9. Had I joined Jeter and O'Connor to the lawsuit when they first wanted in, Mars is right that notice wouldn't have been adequate because plaintiffs' letter would have given Mars no time to engage in settlement, cure the defect, or minimize damages. *See Reyes v. McDonald's Corp.*, Nos. 06 C 1604, 06 C 2813, 2006 WL 3253579, at *3 (N.D. Ill. Nov. 8, 2006) (Plaintiffs filed suit a day after the allegedly offending conduct, "allowing no time for settlement discussions."); *Connick*, 174 Ill.2d at 493–95; U.C.C. § 2–607 cmt. 4.[4] Given the timing of the alleged

---

[4] While plaintiffs' letter suggests that they meant to give Mars the same nonexistent chance to settle as was at issue in *Reyes*, that case is distinguishable because the plaintiffs in *Reyes* never provided notice of any kind. *Reyes v. McDonald's Corp.*, Nos. 06 C 1604, 06 C 2813, 2006 WL 3253579, at *3 (N.D. Ill. Nov. 8, 2006). Jeter and O'Connor may have wanted to

notice and Jeter and O'Connor's request to join this suit, it seems likely that plaintiffs didn't give notice in the spirit contemplated by the U.C.C. But more than six months passed before plaintiffs were actually added to the lawsuit, giving Mars an opportunity to engage with Jeter and O'Connor about their warranty claims.[5] Whether notice of the warranty claims was legally sufficient is debatable, which means that the adequacy of pre-suit notice isn't grounds on which to dismiss these claims now. *See Datil*, 2020 WL 5810402, at *6; *Halo Branded Sols., Inc.*, 2016 WL 1161340, at *4.

B.   **Express Warranty**

To state a claim for breach of express warranty, Jeter and O'Connor must show that Mars breached an "affirmation of fact or promise that was made a part of the basis of the bargain." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill.App.3d 354, 360 (1st Dist. 2007) (quoting *Hasek v. DaimlerChrysler Corp.*, 319 Ill.App.3d 780, 788 (1st Dist. 2001)); *see* 810 ILCS 5/2-313(a). Because warranties are creatures of contract, "the language of the warranty itself is what controls and

---

litigate claims against Mars just days after sending their notice, but months passed between when their letter arrived and when these plaintiffs actually joined the lawsuit.

[5] Defendant argues that the sufficiency of notice should be assessed at the moment notice was dispatched, and that "the mere passage of time" shouldn't cure a defective notice. *See* [38] at 3–4. But Mars doesn't point to any cases supporting that conclusion, *see id.*, and the sufficiency of pre-suit notice depends on whether a defendant had a real opportunity (measured in part by the passage of time) to solve problems outside of court. *See Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 493–95 (1996); U.C.C. § 2–607 cmt. 4, 5; *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill.App.3d 935, 939 (3d Dist. 1998). And how the plaintiffs conducted themselves over time may inform an assessment of their good faith in giving notice.

7

dictates the obligations and rights" of the parties involved. *Oggi Trattoria & Caffe*, 372 Ill.App.3d at 360 (quoting *Hasek*, 319 Ill.App.3d at 788).

Under Illinois law, a plaintiff must be in privity of contract with a defendant in order to bring an action for breach of express warranty. *See Collins Co., Ltd. v. Carboline Co.*, 837 F.2d 299, 301 (7th Cir. 1988) (citations omitted); *Collins Co., Ltd. v. Carboline Co.*, 125 Ill.2d 498, 509–11 (1988); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005) (citations omitted). But there's an exception to that rule, and express warranty claims are permitted to bypass the privity requirement if a manufacturer "expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs." *Rosenstern v. Allergan, Inc.*, 987 F.Supp.2d 795, 805 (N.D. Ill. 2013) (quoting *In re McDonald's French Fries Litig.*, 503 F.Supp.2d 953, 957 (N.D. Ill. 2007)); *Canadian Pac. Ry. Co.*, 2005 WL 782698, at *15 (citing *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill.App.3d 1068, 1074 (5th Dist. 1982)) ("[M]anufacturer documents given directly to the buyer prior to a purchase may give rise to an express warranty because the assertions become part of the basis of the bargain unless clear affirmative proof shows otherwise.").

Mars argues that plaintiffs' express warranty claims should be dismissed because Jeter and O'Connor haven't alleged what level of the offending ingredients was harmful to pets, or that Mars's products actually included that amount of wheat, soy, or chicken. *See* [32] at 9. But Mars is mistaken about the affirmations of fact at issue. While plaintiffs bought Nutro Limited Ingredient Diets foods seeking health

8

benefits for their pets, *see* [30] ¶¶ 2, 43, 61, the express warranties on which plaintiffs sue were Mars's affirmations (made on product packaging, through marketing, advertising, and promotion) that its dog foods were "limited ingredient," and that they contained "no corn, wheat, soy," or chicken. *See id.* ¶¶ 49–51, 91, 102. Plaintiffs allege that these representations were a basis of the bargain, *see* [30] ¶¶ 14–15, 20–21, 24–25, 28–29, 32–33, and that Mars breached these affirmations because the products contained "significant amounts" of these ingredients. *Id.* ¶¶ 53–54. Those allegations are enough to make out a claim for breach of express warranty.

Mars also challenges the express warranty claims because plaintiffs bought the dog foods from third-party retailers, not directly from Mars. [32] at 9–10. However, the exception to the privity requirement applies. Jeter and O'Connor allege that Mars's marketing, packaging, and promotion included specific, written affirmations about the Nutro foods. *See* [30] ¶¶ 49–51, 91. The complaint says that plaintiffs saw those affirmations, relied on them, and bought Mars's products because of them. *See id.* ¶¶ 14–15, 20–21, 24–25, 28–29, 32–33. Mars's written affirmations in its marketing materials gave rise to an express warranty, and so plaintiffs weren't required to allege privity with Mars. *See Canadian Pac. Ry. Co.*, 2005 WL 782698, at *15; *Rosenstern*, 987 F.Supp.2d at 805.

The motion to dismiss the state-law express warranty claims is denied.

### C. Implied Warranty

Mars argues that the state-law implied warranty claims should also be dismissed, and for the same reasons discussed above: inadequate allegations and a lack of privity. [32] at 10–11.

To state a claim for breach of the implied warranty of merchantability, O'Connor and Jeter must allege "(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Boston Sci. Corp.*, 204 Ill.2d 640, 645 (2003); 810 ILCS 5/2-314. To be merchantable, the goods must be fit for the ordinary purpose for which such goods are used. 810 ILCS 5/2-314(2)(c). A showing of a breach of an implied warranty generally requires privity of contract between a plaintiff and a seller of a good. *See Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) (citing *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003)); *Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 288, 292 (1988) (citing *Szajna v. General Motors Corp.*, 115 Ill.2d 294 (1986)).

Mars is right that some of the ordinary purposes that plaintiffs allege for the Nutro Limited Ingredient Diets foods are the prevention of health issues, alleviation of allergies, and provision of health benefits. *See* [30] ¶¶ 43, 61. It's also true that plaintiffs haven't alleged that Mars's products weren't fit for those purposes, because an allegation that the dog foods contained some unknown amount of wheat, soy, and chicken, *see id.* ¶¶ 53–54, isn't the same thing as claiming that Mars's products caused allergic reactions or were less healthy than advertised.

10

But although plaintiffs haven't made out an implied warranty claim based on the health-related purposes for the dog food, the complaint alleges that the ordinary purposes for the Nutro foods also included enabling pet owners to control what their dogs consumed. Mars's products were intended to be used as "limited ingredient" foods. *See* [30] ¶¶ 82, 101–02. Jeter and O'Connor bought the dog foods in order to use them in this way—limiting the ingredients their pets consumed—and Mars advertised its products to encourage that usage. *Id.* ¶¶ 27–34, 100, 102–03.[6] Plaintiffs have adequately alleged that the dog food wasn't merchantable because it wasn't fit for the ordinary purpose of limited ingredient dog foods, namely, to limit pets' exposure to certain ingredients.

Jeter and O'Connor don't allege any exception to the privity requirement for their implied warranty claim. *See* [37] at 9–10. Instead, they argue that the Magnuson–Moss Warranty Act expanded Illinois law, and because they've brought a federal claim for breach of implied warranty, they aren't required to show privity for their state-law claim. *Id.* Plaintiffs are wrong about the law. Privity of contract is required in Illinois to recover economic damages for breach of implied warranty. *See Zylstra*, 8 F.4th at 609 (citing *Voelker*, 353 F.3d at 525). The Illinois Supreme Court, interpreting federal law, found that privity wasn't required for *federal* claims for breach of an implied warranty brought under the Act. *Rothe*, 119 Ill.2d at 293–95 (discussing *Szajna*, 115 Ill.2d at 294) ("Magnuson–Moss broadens the reach of the

---

[6] The allegations of an ordinary purpose for the dog food distinguish this case from *Baldwin*, where a plaintiff didn't allege any ordinary purpose for a product or show how the product was defective. *Baldwin v. Star Sci., Inc.*, 78 F.Supp.3d 724, 741 (N.D. Ill. 2015).

11

UCC article II implied warranties, affording consumers substantially greater protection against defective goods."); *see O'Connor v. Ford Motor Co.*, No. 19-cv-5045, 2021 WL 4866353, at *12 (N.D. Ill. Oct. 19, 2021) (citations omitted) (noting that *Szajna* only relaxed the privity requirement "for purposes of an MMWA claim" brought in Illinois state court). But under *Illinois* law, a showing of privity remains generally required to bring a claim for breach of implied warranty. *See Rothe*, 119 Ill.2d at 292; *Voelker*, 353 F.3d at 525.[7]

Jeter and O'Connor haven't shown that they were in privity with Mars, or explained how any exception to that requirement applies. The motion to dismiss is granted as to the state-law implied warranty claims.

**D. Magnuson–Moss Warranty Act**

The federal warranty claims in this case rise and fall with plaintiffs' state-law claims. *See* 15 U.S.C. §§ 2301, 2310(d)(1); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (citation omitted) ("The Magnuson–Moss Act allows a suit for breach of 'an implied warranty arising under State law.'"); *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) (quoting *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir.2004)) ("[T]he MMWA "allows consumers to enforce [limited] written and implied warranties in federal court [...] borrowing state law causes of action."). Because plaintiffs' express warranty claims survive under

---

[7] Plaintiffs rely on *Mekertichian*, but that case doesn't disagree with the state-law privity requirement. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill.App.3d 828, 832 (1st Dist. 2004) (citations omitted) ("Our supreme court has consistently declined to abolish the [vertical privity requirement for implied warranty claims] in cases where purely economic damages are sought.").

Illinois law, their parallel claims under the Magnuson–Moss Warranty Act survive as well. The federal implied warranty claims are dismissed.[8]

## IV. Conclusion

Mars's motion to dismiss, [31], is granted in part and denied in part. Plaintiffs' express warranty claims are not dismissed. The implied warranty claims are dismissed without prejudice,[9] as are any claims by Jeter and O'Connor for products they did not purchase. The parties' next status report on discovery progress remains due on May 11, 2022.

ENTER:

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Manish S. Shah
United States District Judge

Date: March 22, 2022

---

[8] I must follow the Seventh Circuit's interpretation of federal law, which means that privity is required to make out a claim for breach of implied warranty under the Act. See *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) ("[A] valid claim for breach of the implied warranty of merchantability under the [MMWA] must allege privity in accordance with the applicable state law."); see *O'Connor v. Ford Motor Co.*, Case No. 19-cv-5045, 2021 WL 4866353, at *12 n.4 (N.D. Ill. Oct. 19, 2021) (discussing the apparent conflict between *Voelker* and *Szajna*).

[9] This is the first time that I have dismissed these claims on the merits. See *Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *2 n.2 (N.D. Ill. July 12, 2021). It isn't certain from the face of the complaint that amendment of the implied warranty claims would be futile, and leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); see *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015).